# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | |
|---|---|
| HEATHER M. HENSLEY, | : Case No. 3:18-cv-00100 |
| Plaintiff, | : |
| vs. | : District Judge Walter H. Rice |
| | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Social Security Administrative Law Judge (ALJ) Mark Hockensmith issued a decision in August 2017 concluding that Plaintiff Heather M. Hensley was not under a disability and not eligible to receive Supplemental Security Income. Plaintiff contends, in part, that ALJ Hockensmith committed reversible error by finding the opinions of her treating mental-health specialist "not fully supported by the records…." (Doc. #7, *PageID* #1139). Plaintiff seeks an Order remanding this case for an award of benefits or, at a minimum, for further proceedings.

The Commissioner argues the ALJ described and applied the correct legal criteria to medical sources' opinions and otherwise complied with the regulations when weighing those opinions. The Commissioner seeks an Order affirming ALJ Hockensmith's decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II.     Plaintiff's Vocational Profile and Testimony

On the date Plaintiff filed her application for benefits, she was thirty-six years old and thus considered a younger person under social security law. *See* 20 C.F.R. § 416.963(c). She has a ninth grade (limited) education and no past relevant work experience.

During an administrative hearing held by ALJ Hockensmith, Plaintiff testified that she had been living with her aunt for a year.  She had previously lived for two years with her fiancé and his grandmother.  She was homeless after that, sometimes staying with her sister, other times with her brother.

On her good days, she is able to take care of things inside her home—cooking, cleaning, laundry.  On bad days she mostly rests on the couch or in bed, watching television. She doesn't take showers during her bad days and she does not cook, clean, or do laundry. She does not have a driver's license; her aunt helps her get around.  She could no longer use public transportation due to her anxiety.  She explained, "there's too many people. Too crowded." (Doc. #6, *PageID* #101).

Plaintiff attempted to earn her GED in 2015 but could not due to concentration problems.  She lost custody of her children in 2013 and felt like giving up. She sought treatment for alcohol dependence and went through a treatment program with Wright State University's Community Advocacy Model (CAM).  She stopped attending this program but returned to treatment in 2014.  She explained, I thought maybe I could get some help, where I could be good when I do see my kids again, if I do. *Id*. at 102.  To her great credit, she successfully completed a treatment program at Nova Care Behavioral Health in August

2

2015. After completing this program, her alcohol consumption was, she noted, "actually a lot better." *Id*. at 103. She estimated that she would drink two or three times a month when she was home alone.

Plaintiff testified that although her therapist keeps trying to convince her to go to Alcohol Anonymous meetings, she does not go because the meetings are too crowed. The only thing she really does is to occasionally go to appointments but never goes by herself. She goes to the grocery store even though it is "scary"—she gets anxious just thinking about it. *Id*. at 105. She gets anxious when she thinks about going outside her home. *Id*. at 108. Her mind constantly races. *Id*. at 109. She does not think that she could perform a light-assembly job due to her concentration problem the likelihood of absences caused by her anxiety. She noted, "Or I'd have a panic attack there and have to leave anyway." *Id*. at 112. A panic attack will cause her to "shake [her] leg and rock." *Id*. And her palms get sweaty. *Id*. She apologized during the hearing when her attorney pointed out that "her leg has basically not stopped kicking since [she'd] been in here." *Id*. She explained it was due to anxiety. This is the "leg shaking" she referred to as happening when she has a panic attack.

Plaintiff attends counseling once every other week and sees her psychiatrist once a month. She finds this helpful. She thinks that without it, she would be in an inpatient facility. During her previous treatment at Nova, she attended group sessions because they made her go. She sat at her own table, coloring and putting together puzzles.

Plaintiff testified that her energy level is very low—a three on a zero-to-ten scale. She gets irritated easily and responds by throwing something. She also feels like she wants

3

to scream and she starts shaking. This happens about once a week.

**III.    Medical Evidence**

In October 2014, Giovanni M. Bonds, Ph.D. evaluated Plaintiff at the request of the state agency. During their meeting, Plaintiff informed Dr. Bonds that she had four children. She lost custody of her children three years earlier in part because her ex-husband physically abused her and in part because of her drug abuse. Children Services "did not feel the children were safe." (Doc. #6, *PageID* #313). She also explained to Dr. Bonds "that her ex-husband has been in jail for two years for assaulting her, and [had] previously spent nine months in jail for the same charge…." *Id*.

Dr. Bonds diagnosed Plaintiff with Panic Disorder with Agoraphobia and Major Depressive Disorder. *Id*. at 318. She observed that Plaintiff was "very anxious, tense and ill at ease." *Id*. at 319. Dr. Bonds further reported:

> Heather acted nervous and tense during the interview. She picked at the seams on her jeans, rocked back and forth and sat tensely on the edge of her seat. She states that she was, "literally shaking on the inside." Heather explained that she felt so nervous because she is fearful of leaving home and being in public places. She remarked, "I'm always nervous. Right now I'm soaked in sweat." She worries about what people think of her and she feels that people are looking down on her.
>
> Heather stated that she has panic attacks. When these happen, she shakes, can't breathe and starts itching. She stated that panic attacks happen, "soon as I walk out my door I start panicking.' She also stated that she is bothered by memories of being and assaulted by her ex-husband for 11 years. Heather stated that she used to be very outgoing but now she cannot stand to be away from home. She is uncomfortable around people and avoids them. She also stated that she has some obsessive-compulsive tendencies. She remarked, "If something is out of place, I have to move it or it drives me nuts."

*Id*. at 316-17.  Plaintiff explained to Dr. Bonds that she "stopped drinking in June 2013 because she wanted a better life." *Id*. at 315.   Before then, she "drank to take the edge off, to relax." *Id*.  She also reported occasional past use of marijuana, crack, Vicodin, and Xanax.  *Id*.  She "was in court-ordered treatment for a drug problem at the CAM program in 2013, but she dropped out after she lost custody of her children…." *Id*.  She noted, "I gave up…," and "she discontinued treatment when she got a new boyfriend who did not use drugs…."  *Id*.  In October 2014, she did not have a relationship with her children.  *Id*. at 313.

At the time of Dr. Bonds' interview, Plaintiff was living with her fiancé and his mother and grandmother.  *Id*.  "She previously was homeless and staying with her dad, sister, or cousin."  *Id*.  She informed Dr. Bonds that in the past, she'd had short-term jobs working as a cashier or doing food prep in a fast food restaurant.  And she told Dr. Bonds that she "has had problems on the job due to absenteeism…."  *Id.* at 318.

As to the reliability of Plaintiff's statements, Dr. Bonds provided a positive estimate:

> Heather did not seem to exaggerate or minimize her report of symptoms and problems.  The information she provided seems generally consistent with her background information.

*Id*. at 319.

Dr. Bonds observed, "She seemed very anxious, tense and ill at ease… She is often depressed and very anxious.  She may work best if she works mostly alone."  *Id*.  Dr. Bonds further opined that Plaintiff's "ability to handle day-to-day work stress and pressure is limited by her severe anxiety and depressed mood.  She seems to have low frustration

5

tolerance and may work best in a low stress position where she does not have to interact with many people, or deal with the public." *Id*. at 320.

In December 2014, Plaintiff's psychiatrist at CAM briefly described her treatment:

> Heather Hensley is currently attending CAM for outpatient mental health treatment. She receives counseling and pharmacological management. Her diagnosis is 309.81 (PTSD), 300.21 (Panic Disorder with Agoraphobia, 311 (Depression NOS). Due to her current symptomology it would be difficult for her to engage in work activities.

*Id*. at 811.

A Social Summary Report for Disability Determination on May 20, 2016 (contained in the same Exhibit as the CAM psychiatrist's statements) documented Plaintiff's "disabling medical conditions" as PTSD (with panic attacks), anxiety (symptoms including "shakes, sweats"), depression (including social anxiety), agoraphobia (symptoms including trouble with the public), and sleep apnea. *Id*. at 812. Her living situation was described as "homeless." *Id*.

Another Social Summary Report for Disability Determination attached to the same exhibit indicates Hensley's disabling medical conditions as agoraphobia ("can't go outside alone"), PTSD ("paranoid"), anxiety ("can't be around people"), and depression ("can't control emotions"). *Id*. at 813. Her housing was once again listed as homeless. *Id*.

In June 2016, Plaintiff's treating counselors Certified Nurse Specialist S. Jean Budding and Licensed Professional Clinical Teresa Jones completed a Mental Impairment Questionnaire. They noted diagnoses of PTSD, agoraphobia, panic disorder, alcohol-use disorder, moderate-cannabis-use disorder, dental problems, and homelessness. *Id*. at 815.

6

They reported that Plaintiff had the following 20 symptoms:

| poor memory | perceptual disturbances |
|---|---|
| appetite disturbance with weight change | time or place disorientation |
| sleep disturbance | social withdrawal or isolation |
| mood disturbances | decreased energy |
| emotional lability | intrusive recollections of a traumatic experience |
| hallucinations | generalized persistent anxiety |
| recurrent panic attacks | somatization unexplained by organic disturbance |
| anhedonia or pervasive loss of interests | irritability |
| paranoia or inappropriate suspiciousness | difficulty thinking or concentrating |
| feelings of guilt/worthlessness | suicidal ideation and attempts Last Attempt 2014 |

*Id*. at 815. Ms. Budding and Ms. Jones reported that Plaintiff's anxiety was severe and affected all areas of functioning. They continued:

> Patient experiences panic attacks upon entering stores and is unable to hold down a job due to lack of concentration, social anxiety, unexpected panic attacks, and inability to maintain attendance.

*Id*. at 816.

Ms. Budding and Ms. Jones opined that Plaintiff's impairments or treatment would cause her to be absent from work more than three times per month. *Id*. They also believed that Plaintiff was markedly impaired in maintaining social functioning; markedly impaired in deficiencies of concentration, persistence, or pace; and markedly impaired deterioration or decompensation in work. *Id*. at 817.

7

Later treatment notes in January and March 2017 continued to document Plaintiff's mental-health struggles. Her symptoms included persistent fatigue; restlessness; difficulty initiating sleep; difficulty concentrating; little interest or pleasure in doing things; and feeling down, depressed, or hopeless. *Id.* at 1079-89.

**IV. Supplemental Security Income And The ALJ's Decision**

An applicant qualifies for Supplemental Security Income if he or she is under a disability (among other eligibility requirements). 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). A disability, in this context, is a medically determinable physical or mental impairment debilitating enough to prevent the applicant from engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine if Plaintiff was under a disability, ALJ Hockensmith applied the five-step sequential evaluation mandated by social security regulation. 20 C.R.F. § 416.920(a)(4). Moving through step 1, he found at steps 2 and 3 that Plaintiff's impairments—including her severe impairments of "posttraumatic stress disorder (PTSD), anxiety, depression, and alcohol and cannabis use"— did not automatically entitle her to benefits. (Doc. #6, *PageID* #s 59-61). At step 4, the ALJ found that the most Plaintiff could do despite her impairments—her residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—was the full range of work with the 9 nonexertional limitations, including in, "simple, routine, repetitive task[s]; occasional contact with coworkers and supervisors; no direct dealing with the public; no teamwork

8

projects; no fast-paced work or strict production quotas; static work environment with few changes in routine; and no occupational exposure to alcohol or drugs." *Id*. at 61 (listed numbers omitted).

At step five, the ALJ concluded that Plaintiff could do a significant number of jobs in the regional and national economies. These doable jobs, according to the ALJ, included linen-room attendant, janitor, and motel housekeeper.

## V.     **Standard of Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met— that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria,

9

may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## VI. Discussion

Plaintiff contends that ALJ Hockensmith applied incorrect legal criteria to the opinions provided by her treating mental-health specialists. She is correct.

A treating medical source's opinion may be given controlling weight under the treating-physician rule only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart,* 710 F.3d at 376. "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id.*

The ALJ declined to place either controlling or deferential weight on the opinions provided by Plaintiff's CAM psychiatrist because "they are not fully supported by the record." (Doc. #6, *PageID* #s 68-69). This imposes an incorrect legal standard. Social Security Regulations do not require the medical evidence to fully support a treating medical

10

source's opinions. Rather, under the treating-source rule, ALJs first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic and not inconsistent with other substantial evidence in the case record; if the opinion meets this criteria, the ALJ must give it "controlling weight; *i.e.*, it must be adopted." Social Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996); *see* 20 C.F.R. § 416.927(c); *see also Rogers*, 486 F.3d at 242.

"For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Ruling 96-2p, 1996 WL 374188, *2. *Id*. Similarly, the "term [not inconsistent] is used to indicate that a well-supported opinion need not be supported directly by all the other evidence as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." *Id*. at *3. By requiring the evidence to fully support the opinions provided by Plaintiff's treating CAM psychiatrist, the ALJ measured the CAM psychiatrist's opinion against a higher legal standard than Social Security law requires. This constitutes reversible error because "[a]n ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted)).

The ALJ made the same mistake when finding that the CAM psychiatrist's opinion is not entitled to "deferential weight" because it is "not fully supported by the record." *Id*. at 68-69. Neither the "supportability" and "consistency" factors in the Regulations allow an

11

ALJ to reject a medical source's opinions as not fully supported or not fully consistent with evidence. The ALJ's all-or-nothing approach to weighing this treating psychiatrist's opinions conflicts with the measured approach these regulations apply. The "consistency" factor, for instance, explains, "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 416.927(c)(4).

The Commissioner views this problem as one of form over substance. The Commissioner relies on the ALJ's recitation of the treating-source rule and remaining legal criteria. *See* Doc. #6, *PageID* #68. The ALJ, however, did not apply these legal criteria to the opinions of Plaintiff's mental-health specialists. He instead applied the incorrect rule that required the CAM's psychiatrist's opinions to be fully supported by the record. This was not an error of form; it was an error of substance.

The ALJ also rejected the CAM psychiatrist's opinion because he or she did not identify Hensley's disabling symptoms, and the ALJ found the psychiatrist's opinion to be vague. These reasons fail because the ALJ failed to address the substantial treatment notes supporting the opinion of the treating psychiatrist. The treatment notes repeatedly and consistently document severe symptoms and limitations that are consistent with the opinion of Plaintiff's CAM psychiatrist. *See*, *e.g.*, Doc. #6, *PageID* #s 351-497, 533-811, 851-1050, 1079-1089. Moreover, the Social Summary Reports for Disability Determination (contained in the same exhibit as the CAM psychiatrist's opinion) described Plaintiff's disabling medical conditions and symptoms, including PTSD (with panic attacks, paranoia); anxiety

(symptoms including "shakes, sweats"; can't be around people); depression (including social anxiety, can't control emotions); agoraphobia (symptoms including trouble with the public, can't go outside alone); and sleep apnea. *Id*. at 812-13. Because the record repeatedly documents Plaintiff's mental-health symptoms and because her treating CAM psychiatrist doubtlessly knew she had these symptoms, the ALJ erred by rejecting the treating CAM psychiatrist's opinion. *See Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003) (holding that the treating physician's opinion letter could not be rejected as conclusory when "[v]iewed in context of her medical record [the] letter is a culmination of numerous visits [the claimant] had with her past doctors"); *Parker v. Comm'r of Soc. Sec.*, 2:10cv971, 2012 WL 246276, at *12 (S.D. Ohio 2012) (Frost, D.J; Deavers, M.J.) ("Dr. O'Connor was terse, only referencing Plaintiff's pain and obesity as findings supporting his physical limitation assessments. Nevertheless, when viewed in context of the various medical records Dr. O'Connor submitted, it is apparent that these opinions were founded on an extensive treating relationship, including various physical examinations and test results.").

Plaintiff's treating-mental-health records are consistent with Dr. Bonds' findings and opinions. She observed that Plaintiff had low frustration tolerance, severe anxiety, and depression, and she concluded she would work best alone. *Id*. at 319-20. Although the ALJ purportedly placed "great weight" on Dr. Bonds' opinions, the ALJ overlooked or ignored that Dr. Bonds credited Plaintiff's descriptions of her struggles with anxiety. From what Dr. Bonds could see, Plaintiff "did not seem to exaggerate or minimize her report of symptoms

13

and problems." *Id*. at 319. Dr. Bonds observed that Plaintiff was "very anxious, tense and ill at ease." *Id*. at 319. Dr. Bonds reported that Plaintiff "acted nervous and tense during the interview. She picked at the seams on her jeans, rocked back and forth and sat tensely on the edge of her seat." *Id*. at 316. Dr. Bonds believed Plaintiff when she "expressed that it was very frightening to her to be outside her home…." *Id*. at 316, 319. Even more compelling is the fact that when Dr. Bonds evaluated the substance of Plaintiff's descriptions, she concluded, "The information she provided seems generally consistent with her background information." *Id*. at 319. This is a powerful statement because Dr. Bonds is saying that Plaintiff's symptoms of anxiety, panic attacks, agoraphobia, and depression align with her statements about her personal history—including her troubling family history, her abusive ex-husband, her struggles with alcohol and drug addiction, and the fact that she lost custody of her three children. Given this, it was inconsistent for the ALJ to place great weight on Dr. Bonds's opinions while also failing to fully credit Plaintiff's descriptions of her mental-health problems and resulting limitations.

Lastly, the ALJ rejected the opinion provided by Plaintiff's treating counselor, Ms. Budding, that Plaintiff would be absent from work three times per month.[2] The ALJ rejected this opinion primarily because Plaintiff went on a few limited, sporadic trips and was able to perform some limited household chores and infrequently go to the store and church. Yet, such minimal activities do not constitute a reasonable basis for rejecting Ms. Budding's opinion. *Cf. Gayheart*, 710 F.3d at 377 ("Gayheart's ability to visit his aunt and

---

[2] The vocational expert testified during the ALJ's hearing that more that more than three absences per month would leave a hypothetical person without available employment. *Id*. at 117-18.

uncle, who live on his street, and to receive occasional visits from his neighbor does not undermine Dr. Onady's opinion that Gayheart's ability to interact independently and appropriately with others on a sustained basis is markedly impaired. The same is true of his ability to accompany his wife on grocery-shopping trips once per month. These activities would be relevant if they suggested that Gayheart could do something on a sustained basis that is inconsistent with Dr. Onady's opinions. But they do not."); *cf. also Rogers*, 486 F.3d at 248-49 (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical work activities).

Accordingly, for all the above reasons, Plaintiff's Statement of Errors is well taken.

## VII. Remand

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

15

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of § 405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether she was under a benefits-qualifying disability, including, at a minimum, a reassessment of her residual functional capacity and a re-consideration of the evidence at steps four and five of the sequential evaluation.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Heather Hensley was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


July 19, 2019                                                   *s/Sharon L. Ovington*
                                                                Sharon L. Ovington
                                                                United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).